JS-44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

HORIZON LINES, LLC

## DEFENDANTS

MOBIL OIL GUAM, INC.

**RECEIVED**
JUN 30 2003
DISTRICT COURT OF GUAM
HAGATNA, GUAM

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
David Ledger, Esq.
Elyze McDonald, Esq.
CARLSMITH BALL LLP
Suite 401, Bank of Hawaii Building
134 West Soledad Avenue
Hagatna, Guam 96910

ATTORNEYS (IF KNOWN)    CV-03-00023

Unknown at this time.

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Plaintiff brings this action in general and/or gross negligence, negligence based on dangerous instrumentality, and strict liability as an admiralty claim under Fed.R.Civ.P. 9(h) and under diversity (28 U.S.C. §1332), and seeks damages in an amount greater than $75,000.00, to be proven at trial, plus pre-judgment interest, punitive damages, and costs.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $ an amount greater than $75,000.00 to be proven at trial.

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE: June 30, 2003

SIGNATURE OF ATTORNEY OF RECORD: *Elyze McDonald*

**FOR OFFICE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

ORIGINAL

Case 1:03-cv-00023    Document 1    Filed 06/30/2003    Page 1 of 1



CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No.: 472-6813

Attorneys for Plaintiff
Horizon Lines, LLC

IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| HORIZON LINES, LLC, | ) | CIVIL CASE NO. 03-00023 |
| Plaintiff, | ) | |
| vs. | ) | **COMPLAINT** |
| MOBIL OIL GUAM, INC., | ) | |
| Defendant. | ) | |

Plaintiff alleges the following:

1. The Court has jurisdiction over this action pursuant to Federal Rule of Civil Procedure 9(h), this action containing admiralty and maritime claims, and pursuant to 28 U.S.C. § 1332.

2. Venue in this Court is proper as the events leading to the cause of action alleged occurred on Guam.

3. Plaintiff Horizon Lines, LLC ("Horizon"), is a Delaware corporation, with its principal place of business in Charlotte, North Carolina.

4. Horizon is the successor-in-interest to CSX Lines, LLC and operates, among other things, as a carrier of goods shipped from off-island locations to Guam and Micronesia.

5. Upon information and belief, Defendant Mobil Oil Guam, Incorporated ("Mobil") is licensed to do business on Guam. Mobil wholesales and retails petroleum products throughout Guam and Micronesia.

6. Mobil's petroleum products are highly combustible and hazardous.

7. Mobil stores its petroleum products and gasoline in various storage tanks located at Mobil's lot on Guam's Port on Cabras Island, Piti, Guam.

8. The storage of Mobil's petroleum products are maintained by Mobil under standards established by Mobil.

9. The storage of Mobil's petroleum products must also comply with Guam Fire Department regulations.

10. Mobil's storage tanks and/or fire suppression systems were previously damaged during Typhoon Chata'an and Typhoon Halong, which hit Guam in July 2002.

11. After Typhoon Chata'an and Typhoon Halong, Mobil's storage tanks and/or fire suppression systems were no longer equipped to perform under typhoon conditions, or other adverse weather conditions, nor to counteract static electricity caused by high volumes and speed of air travel within the storage tanks.

12. Mobil's storage tanks and/or fire suppression systems were ill-equipped or altogether unable to perform under typhoon conditions, or other adverse weather conditions, nor to counteract static electricity caused by high volumes and speed of air travel within the storage tanks.

13. On Sunday, December 8, 2002, Supertyphoon Pongsona hit the island of Guam. Mobil had prior knowledge that Supertyphoon Pongsona was predicted to hit the island of Guam.

14. At the height of the storm, one of Mobil's storage tanks ignited due to high levels of static electricity within the tanks. Mobil's tanks were unequipped to deal with the high levels of static electricity.

15. Mobil possesses superior knowledge or means of information as to the state of its storage tanks prior to the fire, and the cause of the fire.

16. The fire spread to consume five of Mobil's other tanks, endangering Guam's fuel supply, and threatening the safety of Port personnel and Port users.

17. As a result of the hazardous conditions created by Mobil, the Captain of the Port and/or government of Guam officials restricted access to the Port for both on-island users and vessels at sea awaiting docking and off-loading, until the fire was extinguished and the Port was declared safe to use.

18. Horizon's vessel, CSX Trader ("Trader"), was slated to dock at the Port on December 6, 2002. The Trader contained perishable commodities such as chilled fruit and produce, canned goods, and other consumer items.

19. The Trader was unable to dock due to the Mobil fire and the subsequent closure of the Port.

20. The Trader was thus required to stand off Guam for five days, in which it burned 2200 bbls of fuel. After those five days, in which the Port was still closed, and because the cessation of the fire and the opening of the Port was unknown, the Trader only had enough

fuel to make it to its next destination, Hong Kong, to unload its cargo. Horizon therefore ordered the Trader to travel to Hong Kong to unload its cargo.

21. The Trader reached Hong Kong on December 15, 2002.

22. From Hong Kong, cargo destined for Guam and Saipan were transshipped to feeder vessels:

(a) the M.V. Repulse Bridge Voyage 093, which arrived in Saipan on December 25, 2002, and in Guam on December 26, 2002;

(b) Grandeur V-03, which arrived in Saipan on January 8, 2003, and in Guam on January 9, 2003; and

(c) Repulse Bridge V-094, which arrived in Saipan on January 15, 2003, and in Guam on January 16, 2003.

23. The cargo, due to the delay in having been discharged more than 18 days after its scheduled offloading, was largely damaged and rotten, in some instances reeking of maggots and creating a health hazard.

24. As a result of the port closure due to the Mobil oil tank fire, Horizon Lines incurred a loss of at least $75,000.00, and in an amount to be proven at trial.

## COUNT I - GENERAL AND/OR GROSS NEGLIGENCE

25. Horizon realleges and incorporates by reference paragraphs 1 through 24.

26. Mobil owes a general duty to the general public and to other users of the Port to use due care in the proper maintenance of its storage tanks, fire suppression systems, machinery and equipment, and to ensure their safety during typhoons and other adverse weather conditions.

27. Mobil owes a general duty to foresee the danger involved in storing highly-combustible petroleum products in storage tanks unequipped to handle typhoon or other adverse weather conditions and/or resulting static electricity.

28. Mobil owes a general duty to take necessary precautions and to employ safeguards to prevent its petroleum products from igniting during typhoon or other adverse weather conditions by storing the petroleum in storage tanks equipped to handle the petroleum in such conditions.

29. Mobil owes a general duty to warn the public that its storage tanks, machinery and equipment are not equipped to store petroleum products in typhoon or other adverse weather conditions.

30. Mobil's general duties are heightened due to the nature of its business, that being the storage and sale of highly combustible and hazardous petroleum products.

31. Mobil breached the aforementioned duties by failing to ensure the safety of its storage tanks, fire suppression systems, machinery and equipment during typhoon conditions.

32. Mobil's breach proximately caused the closure of the Port, the suspension of commercial activity and the inability of Port consumers such as Horizon to offload their cargo.

33. Due to Mobil's breach, the suspension of and delay in Horizon's ability to offload its cargo, the necessity to dock at foreign ports, and the lost opportunities for Horizon to conduct further commercial and maritime activity due to the delay and the inability to dock on Guam, Horizon subsequently incurred damages, greater than $75,000.00, and in an amount to be proven at trial.

34. Mobil's actions and inactions were negligent and/or grossly negligent.

## COUNT II - NEGLIGENCE BASED ON DANGEROUS INSTRUMENTALITY

35. Horizon realleges and incorporates by reference paragraphs 1 through 34.

36. Mobil is aware that its petroleum products are highly combustible once there is a buildup of static electricity near the petroleum, and the petroleum therefore constitutes a dangerous instrumentality.

37. Mobil is therefore under a heightened duty to use due care in dealing with and maintaining that instrumentality.

38. Mobil is aware that its storage tanks were not equipped to handle the volume of static electricity which resulted from typhoon-condition winds, and that the buildup of static electricity could ignite the highly-combustible petroleum products. Mobil knew that the inadequate storage facilities for its petroleum products created a dangerous fire hazard.

39. Despite its knowledge that its storage tanks, machinery and equipment were not fit to perform during typhoon conditions, and in disregard of the high degree of risk of serious bodily harm, death, and property damage, Mobil nevertheless continued to store its petroleum products in the storage tanks and otherwise failed to take precautionary measures to avoid the risk.

40. Mobil was under a duty to take reasonable precautions to prevent its petroleum products from igniting within its storage tanks under typhoon conditions, to inspect and test its storage tanks to ensure that they could endure such conditions, to investigate, to warn others of the danger of its unequipped storage tanks, to maintain its storage tanks, machinery and equipment to sustain typhoon-related conditions, and to employ sufficient safeguards to reduce the hazard involved in maintaining its petroleum products.

41. Mobil breached each and every duty owed.

42. As a result of Mobil's breach, a fire erupted from one of Mobil's storage tanks during Supertyphoon Pongsona, and spread rapidly to other storage tanks.

43. This large, disastrous fire caused by Mobil and its inadequate storage of highly combustible products was of such magnitude so as to require the closure of the Port and the restriction of the Port to regular commercial activity.

44. Due to Mobil's breach, the suspension of and delay in Horizon's ability to offload its cargo, the necessity to dock at foreign ports, and the lost opportunities for Horizon to conduct further commercial and maritime activity due to the delay and the inability to dock on Guam, Horizon subsequently incurred damages, greater than $75,000.00, and in an amount to be proven at trial.

45. Mobil's actions and inactions were negligent with respect to the dangerous instrumentality.

## COUNT III - STRICT LIABILITY

46. Horizon realleges and incorporates by reference paragraphs 1 through 45.

47. Mobil is aware that its petroleum products are highly combustible once there is a buildup of static electricity near the petroleum.

48. Mobil is aware that its storage tanks were not equipped to handle the volume of static electricity which resulted from typhoon-condition winds, and that the buildup of static electricity could ignite the highly-combustible petroleum products. Mobil knew that the inadequate storage facility for its petroleum products created a dangerous fire hazard.

49. Despite its knowledge that its storage tanks, machinery and equipment were not fit to perform during typhoon conditions, and in willful and wanton disregard of the

high degree of risk of serious bodily harm, death, and property damage, Mobil nevertheless willfully, wantonly, and recklessly continued to store its petroleum products in the storage tanks.

50. As a result of its willful, wanton and reckless conduct, a fire erupted from one of Mobil's storage tanks during Supertyphoon Pongsona, and spread rapidly to other storage tanks, which were similarly ill-equipped to safely perform under existing conditions.

51. This large, disastrous fire caused by Mobil and its inadequate storage of highly combustible products was of such magnitude so as to require the closure of the Port and the restriction of the Port to regular commercial activity.

52. As a result of the highly dangerous, willful, wanton, reckless and outrageous misconduct of Mobil and its strict liability in tort for inadequately storing highly combustible petroleum products, which resulted in a suspension of commercial activity at the Port, Horizon has sustained damages by having to suspend its commercial activity, to dock at foreign ports, and to lose opportunities for further commercial and maritime activity due to closure of the Port, for greater than $75,000.00, and in an amount to be proven at trial.

53. Mobil's actions and inactions make Mobil strictly liable for Horizon's damage.

WHEREFORE Plaintiff requests judgment against Defendant for the following:

1. Damages, greater than $75,000.00, and in an amount to be proven at trial;
2. Pre-judgment interest on damages awarded;
3. Punitive Damages according to law;
4. Costs of this action; and

5. Such other and further relief as the Court deems just and proper.

Dated this 30th day of June 2003.

CARLSMITH BALL LLP

*Elyze McDonald*
DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
Horizon Lines, LLC

# United States District Court

_____ DISTRICT OF  GUAM U.S.A. _____

HORIZON LINES, LLC,

        Plaintiff,

V.

MOBIL OIL GUAM, INC.,

        Defendant.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: 03-00023

TO: (Name and address of defendant)

MOBIL OIL GUAM, INC.
642 East Marine Drive
Hagatna, Guam 96910

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

David Ledger, Esq.
Elyze McDonald, Esq.
CARLSMITH BALL LLP
Suite 401, Bank of Hawaii Building
134 West Soledad Avenue
Hagatna, Guam 96910
#(671) 472-6813

ACKNOWLEDGED RECEIPT

By: _Inya Perez_
Date: _6/30/03_

an answer to the complaint which is herewith served upon you, within ___Twenty (20)___ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MARY L. M. MORAN
Clerk Of Court

CLERK

/s/ Walter M. Tenorio
(BY) DEPUTY CLERK

JUN 3 0 2003

DATE

COPY